# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **THE CITY OF ATLANTA, GEORGIA** : | **Case No.** |
| : | |
| **Plaintiff,** : | **Judge** |
| : | |
| v. : | |
| : | |
| **AVERY PARK PARTNERS, LLC d/b/a** : | |
| **AVERY PARK, COLONY CREEK,** | |
| **LLC, AND THE CITY OF COLLEGE** : | |
| **PARK, GEORGIA,** | |
| : | |
| **Defendants.** : | |

_____

## COMPLAINT FOR DECLARATORY JUDGMENT
_____

Plaintiff, the City of Atlanta (the "City"), files this Complaint for Declaratory Judgment against Defendants Avery Park Partners, LLC d/b/a Avery Park ("Avery"), Colony Creek, LLC ("Colony Creek"), and the City of College Park, Georgia ("College Park").

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 <u>et seq.</u>

2. The City is a municipal corporation incorporated under the laws of the State of Georgia. The City is the owner and operator of Hartsfield-Jackson Atlanta International Airport (the "Airport").

3. Defendants Avery and Colony Creek are developers (collectively, the "Developers") that own property in the City of College Park.

4. Defendant Avery is the owner of Avery Park, 2609 Charlestown Drive, College Park, Georgia 30337, Parcel Identification Number 13-0004-LL-045-5. Avery may be served with process at the office of its registered agent for service of process, David Scott Henderson, located at 105 Hendrix Drive, Canton, Georgia 30115.

5. Defendant Colony Creek is the owner of Harrington Park, 2800 Camp Creek Parkway, College Park, Georgia 30337, Parcel Identification Number 14-0224-LL-052-3, and Colony at Camp Creek Apartments, 3222 Kennelworth Drive, East Point, Georgia 30344, Parcel Identification Number 14-0225-LL-092-8. Colony Creek may be served with process at the office of its registered agent for service of process, David Scott Henderson, located at 105 Hendrix Drive, Canton, Georgia 30115.

6. Defendant City of College Park ("College Park") is a Georgia municipal corporation, partially situated within Fulton County, and incorporated under the laws of the State of Georgia. College Park may be served with process by serving the City Manager, Terrence Moore, located at City Hall, 3667 Main

Street, College Park, Georgia 30337.  College Park is named as a party because it has a potential interest in the outcome of this litigation.

7. The City and the City of College Park were parties to a prior case in this Court styled <u>City of College Park, et al. v. The City of Atlanta</u>, Civil Action File No. 1:08-cv-1464-JEC (the "College Park Suit").  The College Park Suit, which involves in relevant part the City of Atlanta's purchase of property located in College Park, is related to this action.  On or about July 30, 2010, Hon. Julie Carnes entered a Consent Order, which, with one exception, prevents the City from acquiring multi-family residences within College Park (the "Consent Order").  A true and correct copy of the Consent Order is attached hereto as Exhibit "A."

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, and § 2201.  Pursuant to 28 U.S.C. § 1331, the district courts have original jurisdiction of all civil actions asserting claims or protecting rights that arise under federal law.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims in this Complaint occurred in this judicial district, the property that is the subject of the action is situated in

this judicial district, and because Defendants are subject to jurisdiction in this judicial district.

10. This Court has personal jurisdiction over Defendants.

## BACKGROUND

11. The Aircraft Safety and Noise Abatement Act of 1979, 49 U.S.C. 47501 et seq. ("Noise Abatement Act"), establishes a voluntary and uniform national program for addressing aircraft noise, and authorizes the Federal Aviation Administration ("FAA") to regulate "airport noise compatibility planning" and to make federal funds available to reduce incompatible land uses in the vicinity of airports caused by aircraft noise.

12. To implement the Noise Abatement Act, the FAA established the Noise Compatibility Planning Process as part of the Federal Aviation Regulations, listed as Part 150 of Title 14 of the Code of Federal Regulations ("Part 150").

13. Part 150 establishes uniform national methods for preparing noise exposure maps ("NEM"). NEM establish "noise contours," which are areas on the NEM where computer-modeled average annual noise levels are indicated in a unit of measurement known as "DNL." In essence, DNL is a measure of noise exposure in decibels over a 24-hour period, weighted more heavily toward the nighttime hours.

14. Part 150 also delineates procedures, standards, and methodologies for an airport's creation and implementation of Noise Compatibility Programs ("NCPs"), which are voluntary programs used to reduce noise impact within the airport vicinity consistent with local interests.

15. In 2007, the City submitted a properly prepared NEM (the "2007 NEM"). The 2007 NEM was accepted by the FAA on April 10, 2007. A true and correct copy of the FAA's letter accepting the 2007 NEM is attached hereto as Exhibit "B."

16. In 2007, the City proposed amendments to the Airport's NCP, which were approved by the FAA on January 24, 2008 (the "Airport-NCP") (attached hereto as Exhibit "C").

17. The FAA-approved Airport-NCP allows the Airport to undertake voluntary measures to provide: (a) possible sound insulation for qualifying properties located within the 65 DNL contour on the 2007 NEM; and (b) possible acquisition of qualifying properties located within the 70 DNL contour.

18. As amended in 2007, multi-family properties became potentially eligible to participate in the Airport-NCP. Multi-family properties were not previously eligible.

19. In 2012, the City submitted the 2012 NEM to the FAA for approval. The 2012 NEM has been approved by the FAA.

20. Developers recently acquired their properties. Developers' properties are located wholly or partially within the 70 DNL contour on the 2007 NEM and on the 2012 NEM.

21. As one of the general requirements in establishing NCPs, participating airport sponsors, such as the City, must consult and work with local authorities. This is so because every locality is different. Although federal law establishes uniform standards for assessing noise and preparing NEMs, the law and regulations recognize that local considerations should be considered in implementing NCPs.

22. College Park is located adjacent to and generally west of some of the Airport, and the Airport is partially located in College Park's boundaries.

23. In response to the possible acquisition of multi-family properties in College Park under the Airport-NCP, College Park filed the College Park Suit, in which it alleged, among other things, that the City's acquisition of property in College Park violated the Voting Rights Act for various reasons.

24. After the City substantially prevailed in the College Park Lawsuit in this Court, College Park appealed to the United States Court of Appeals for the

Eleventh Circuit. While College Park's appeal was pending, the City and College Park reached a mediated settlement, which resulted in the entry of the Consent Order.

25. The Consent Order is consistent with the directives of federal law and regulations requiring consultation and cooperation with local jurisdictions in implementing noise compatibility programs. The Consent Order also is consistent with the directives of federal law and regulations providing for local administration of noise compatibility programs and providing airport sponsors with considerable discretion in implementing noise compatibility programs in a manner consistent with local interests.

26. The Consent Order, with one exception, effectively prevents the City from acquiring multi-family residences within College Park. Since the entry of the Consent Order, the City has abided by the substance of its terms by, among other things, not acquiring multi-family residences within College Park pursuant to the Airport-NCP.

27. Pursuant to the requirements of the Consent Order, the City's Department of Aviation has submitted an amendment to the Airport-NCP to the FAA, which includes language referencing the Consent Order's terms pertaining to land acquisition within College Park.

28. Developers seek to force the City to acquire their properties under the Airport-NCP in violation of the Consent Order. Developers contend that, because their properties are located within the 70 DNL contour on the 2007 and 2012 NEM, the City is obligated by federal law to acquire their properties without regard to the terms of the Consent Order.

29. Developers have refused the City's suggestion for Developers to seek College Park's consent to the acquisition of their properties.

30. The City disputes Developers' interpretation of their alleged rights and the City's alleged obligations under federal law and regulation. Contrary to Developers' assertions, the City, as an airport sponsor, is vested with considerable discretion under the Airport-NCP in deciding whether to acquire any property.

31. The City, as an airport sponsor, is also vested with considerable discretion in cooperating with local political jurisdictions such as College Park in implementing the Airport-NCP, including, but not limited to, agreeing to provisions such as are contained in the Consent Order.

32. In any event, Developers' position would require the City to violate the Consent Order, which is a valid and outstanding order and judgment of this Court.

33. Developers have repeatedly attempted to bring pressure on the City to violate the Consent Order through regulatory proceedings and through federal and state political pressure based on incomplete or misleading statements of fact. At the same time, Developers have refused the City's suggestion to contact College Park to secure a waiver or consent regarding the Consent Order. Developers have therefore acted in bad faith and have caused the City unnecessary trouble and expense, entitling the City to an award of attorney's fees under O.C.G.A. §13-6-11.

34. On information and belief, College Park contends that the Consent Order constitutes a valid and outstanding order and judgment of this Court, and opposes any action by the City to acquire Developers' properties under the Airport-NCP.

35. A ripe, justiciable controversy exists between the City, on the one hand, and Developers, on the other. College Park has an interest in the outcome of the controversy.

## RELIEF REQUESTED

36. The City seeks and is entitled to a judicial declaration of the rights, obligations and responsibilities of the parties because the City has no other adequate remedy that will resolve the current controversies.

37. Specifically, the City requests the Court enter an Order declaring the rights, duties and obligations of the parties as follows:

(a) The Consent Order is a valid and binding order of this Court;

(b) The City, as the Airport sponsor, has considerable discretion under applicable federal law and regulation, in implementing and administering the Airport-NCP, including, but not limited to, taking into consideration the stated wishes of College Park and other municipalities that may be affected by Airport operations;

(c) Developers have no right under the Consent Order to require the City to acquire their properties, regardless of whether the properties are otherwise eligible for acquisition under the Airport-NCP;

(d) Developers have no right under federal law to require the City, as an airport sponsor, to acquire their properties regardless of whether the properties are potentially otherwise eligible for acquisition or other relief under the Airport-NCP; and

(e) The City, as an airport sponsor, has discretion in implementing the Airport-NCP and may exercise that discretion in deciding whether or not to acquire potentially eligible properties or to provide sound insulation to potentially eligible properties, so long as it has a rational basis for its action.

38. The City also requests that this Court enter an Order requiring the Developers to pay the City's attorney's fees and litigation expenses pursuant to O.C.G.A. § 13-6-11.

**WHEREFORE**, the City requests that:

(a) the Court enter an Order declaring the rights, duties and obligations of the parties, as set forth above;

(b) the Court enter an Order awarding the City its reasonable attorney's fees and litigation expenses to be paid by Defendant Developers, in an amount to be proven at trial or upon disposition of this action;

(c) the Court assess the costs of this action on Defendant Developers; and

(d) the Court award the City such other and further relief as is just and proper.

Respectfully submitted this 26th day of July 2013.

/s/ *John L. Watkins*
John L. Watkins, Esq.
john.watkins@thompsonhine.com
Georgia Bar No. 740515

Roy E. Hadley, Jr., Esq.
roy.hadley@thompsonhine.com
Georgia Bar No. 003730

|  |  |
|---|---|
|  | Leslie J. Suson |
|  | leslie.suson@thompsonhine.com |
|  | Georgia Bar No. 142162 |
| **THOMPSON HINE LLP** | Attorneys for The City of Atlanta |
| Two Alliance Center |  |
| 3560 Lenox Road, Suite 1600 |  |
| Atlanta, Georgia 30326-4266 |  |
| (404) 541-2900 – Main |  |
| (404) 541-4266 – Facsimile |  |